IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ALICIA M. A.,

               Plaintiff,

          v.                                        Civil Action No.
                                                5:21-CV-1154 (DEP)

COMMISSIONER OF SOCIAL
SECURITY,

                 Defendant.

_____

APPEARANCES:                                OF COUNSEL:

FOR PLAINTIFF

LAW OFFICES OF                              JUSTIN M. GOLDSTEIN, ESQ.
KENNETH HILLER, PLLC                        KENNETH R. HILLER, ESQ.
6000 North Bailey Ave, Suite 1A
Amherst, NY 14226

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                      VERNON NORWOOD, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

     Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1]  Oral argument was heard in connection with those motions on December 13, 2022, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)    Defendant's motion for judgment on the pleadings is GRANTED.

---

[1]    This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2)     The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3)     The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:     December 16, 2022
              Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ALICIA MARIE A.,

                        Plaintiff,

vs.                                          21-CV-1154

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
-------------------------------------------------------x

### *TRANSCRIPT OF DECISION*

held on December 13, 2022 by teleconference

the HONORABLE DAVID E. PEEBLES

United States Magistrate Judge, Presiding


<u>APPEARANCES</u>  (by telephone)

For Plaintiff:      LAW OFFICE OF KENNETH HILLER, PLLC
                    600 North Bailey Avenue
                    Amherst, New York 14226
                      BY:  JUSTIN M. GOLDSTEIN, ESQ.

For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    6401 Security Boulevard
                    Baltimore, MD 21235
                      BY:  VERNON NORWOOD, ESQ.


*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1        THE COURT:  Let me begin by thanking counsel for

2   excellent and, if not, spirited presentations.

3        This is a proceeding brought pursuant to 42, United

4   States Code, Sections 405(g) and 1383(c)(3) by the plaintiff

5   challenging an adverse determination by the Commissioner of

6   Social Security finding that she was not disabled at the

7   relevant times and therefore ineligible for the benefits

8   sought.

9        The background is as follows.  Plaintiff was born

10  in January of 1979 and is currently 43 years of age.  She was

11  40 years old at the alleged onset of disability on

12  October 17, 2019.  She stands 5-foot 1-inch in height and

13  weighs approximately 120 pounds.

14       Plaintiff lives alone in a mobile home in Mexico,

15  New York.  She is married but her husband has been

16  incarcerated, or was at the time of the hearing, since 2018.

17  Plaintiff has five children; in February of 2021 they ranged

18  in age from 14 to 23.  And although she shares joint custody

19  with the father, the father is the primary custodian and the

20  plaintiff states that she does not see her children.

21       Plaintiff has a high school diploma and attended

22  regular classes while in school.  She also underwent a BOCES

23  office/technical program.  Plaintiff had a driver's license

24  but it has been suspended as a result of child support

25  issues.  Plaintiff is a weekly user of marijuana and a former

1    alcohol abuser.

2           Plaintiff stopped working in December of 2018.

3    After being in the Army, she worked in various positions,

4    including as a drug tester, in retail, and a medical Medicaid

5    transport driver.

6           Physically, plaintiff suffers from several

7    impediments, including cervical spine issues that have been

8    described as disc protrusion, Type 2 diabetes, asthma,

9    headaches, and bilateral wrist issues.

10           Mentally, plaintiff experiences anxiety, bipolar

11    disorder, depression, and alcohol use disorder.  She was

12    hospitalized twice in 2016 based upon suicidal ideations, but

13    has not been hospitalized during the relevant period for

14    psychiatric reasons.

15           The records seem to indicate, as defendant's

16    counsel has argued, that plaintiff's psychological conditions

17    are exacerbated by marital issues surrounding her

18    relationship with her husband, and at one time due to the

19    possibility that she suffered from breast cancer.  Plaintiff

20    has obtained treatment through various sources, including

21    Liberty Resources, where she sees Nurse Practitioner Joshua

22    Blodgett one time per month, and Licensed Clinical Social

23    Worker Anthony Fazzino weekly.  She also sees Dr. Young Seo

24    at Central New York Spine and Pain Medication.  She treats at

25    Prime Care Medical Center and Oswego Health.

1          Plaintiff's activities of daily living include the

2    ability to bathe, dress, groom, cook, clean, do laundry, go

3    to the store occasionally, her friend takes her due to the

4    lack of a driver's license, some socialization.  She watches

5    television.  She plays video games.  She reads.  She goes on

6    social media.  She is able to sometimes mow her lawn but not

7    always, and shovels some snow, although her neighbor helps in

8    that regard.

9          Procedurally, plaintiff applied for Supplemental

10   Security Income Payments, or Title XVI benefits, on April 30,

11   2020, alleging an onset date of October 17, 2019.  The record

12   suggests that there are multiple prior denials of Title II

13   disability insurance payment applications, possibly in 2014,

14   2016 and 2019, and those are the dates upon which apparently

15   the Social Security Administration Appeals Council denied

16   review in those cases.

17         A hearing was conducted on February 18, 2021 by

18   Administrative Law Judge Robyn Hoffman who addressed

19   plaintiff's application for benefits.  A supplemental hearing

20   with a vocational expert was conducted by ALJ Hoffman on July

21   21, 2021.  On August 4, 2021, ALJ Hoffman issued an

22   unfavorable decision which became a final determination of

23   the Agency on September 15, 2021, when the Social Security

24   Administration Appeals Council denied plaintiff's application

25   for review.  This action was commenced on October 21, 2021,

*Decision - 21-cv-1154*                                      5

1  and is timely.

2          In her decision ALJ Hoffman applied the familiar

3  five-step sequential test for determining disability.  She

4  first found that plaintiff had not engaged in substantial

5  gainful activity since April 30, 2020, the date of her Title

6  XVI application.

7          At step two she concluded that plaintiff does

8  suffer from severe impairments that impose more than minimal

9  limitations on her ability to perform work functions,

10 including cervical spine disc protrusion, bipolar disorder,

11 anxiety disorder, and major depressive disorder.

12         At step three ALJ Hoffman concluded that

13 plaintiff's conditions do not meet or equal any of the listed

14 presumptively disabling conditions set forth in the

15 Commissioner's regulations, specifically considering listings

16 1.15, 12.04, 12.06 and 12.15.

17         After reviewing the available evidence in the

18 record, ALJ Hoffman next concluded that notwithstanding her

19 impairments, plaintiff is capable of performing light work as

20 defined in the regulations with limitations both physical and

21 mental.  I'll address them in more detail during my analysis

22 of plaintiff's arguments.

23         At step four, applying that RFC determination, ALJ

24 Hoffman concluded that plaintiff did not have any past

25 relevant work to compare and proceeded to step five.

1  Thereafter noting that if plaintiff was capable of performing

2  a full range of light work, a finding of no disability would

3  be compelled by the Medical-Vocational Guidelines, or the

4  so-called grids, set forth in the Commissioner's regulations,

5  specifically Rule 202.20, but concluded that because of the

6  existence of additional limitations, exertional and

7  non-exertional, that would erode the job base upon which the

8  grids are predicated, contacted and consulted with a

9  vocational expert.

10        After posing a hypothetical to the vocational

11 expert that tracked the RFC finding, she concluded based upon

12 the vocational expert's testimony that plaintiff is capable

13 of performing work that is available in the national economy,

14 citing as representative positions those of router, an

15 automatic car wash attendant, and small products assembler,

16 and concluded that plaintiff is, therefore, not disabled.

17        As you know, the Court's function is to determine

18 whether correct, legal principles were applied and the

19 resulting determination is supported by substantial evidence,

20 defined as such relevant evidence as a reasonable mind would

21 find sufficient to support a conclusion.

22        As the Second Circuit has noted, this is an

23 extremely deferential standard that was noted in *Brault*

24 *versus Social Security Administration Commissioner*, 683 F.3d

25 443, from June of 2012, and reiterated in *Schillo v.*

1   *Kijakazi*, 31 F.4th 64, from April 6, 2022.   In the *Brault*

2   case the Second Circuit noted significantly that under the

3   standard to be applied, if an ALJ finds a fact, that fact can

4   be rejected only if a reasonable fact-finder would have to

5   conclude otherwise.

6          In this case plaintiff raises three basic

7   arguments.   She argues that the residual functional capacity

8   was not supported, attacking both the physical and the mental

9   components.   Secondly, she argues that the Administrative Law

10  Judge's analysis of the medical opinions and the record is

11  flawed and inconsistent with the governing regulations.   And

12  third, she challenges the analysis of her subjective

13  complaints as not being supported by substantial evidence.

14         Of course, the first task for an Administrative Law

15  Judge is to determine a claimant's RFC, which represents a

16  finding of the range of tasks she is capable of performing

17  notwithstanding her impairments.   *Tankizi versus Commissioner*

18  *of Social Security*, 521 F.App'x 29, at 33, Second Circuit

19  2013, and is also addressed in 20 CFR Section 416.945(a).

20         An RFC represents the claimant's maximum ability to

21  perform sustained work activities in an ordinary setting on a

22  regular and continuing basis, meaning eight hours a day for

23  five days a week, or an equivalent schedule.   An RFC, of

24  course, is informed by consideration of all relevant medical

25  and other elements and to be upheld must be supported by

1  substantial evidence.

2          In this case the RFC finding turns primarily,

3  although not exclusively, on the medical opinions in the

4  record.  Plaintiff challenges, as I indicated, both the

5  physical and mental aspects of the RFC.  When medical

6  evidence is assessed by an Administrative Law Judge in cases

7  where applications were filed after March of 2017, the

8  so-called new regulations control.  Under those regulations

9  an ALJ no longer defers or gives any specific evidentiary

10 weight, including controlling weight, to any medical opinion

11 or prior administrative medical findings, including from a

12 claimant's medical sources.  Instead, the ALJ must consider

13 those opinions using the relevant factors and specifically

14 must address and consider the factors of supportability and

15 consistency of those medical opinions.  The ALJ must

16 articulate how persuasive he or she finds each medical

17 opinion and must explain how he or she considered the

18 supportability and consistency of those medical opinions.

19 The other factors must be considered, but the ALJ is not

20 required to explain how he or she considered those factors as

21 appropriate in any particular case.

22          In this case the physical components of the RFC

23 were explained by the Administrative Law Judge at pages 16

24 and 17 of her decision.  She based the physical components of

25 the RFC on state prior administrative findings of

1   Dr. Ahmed at 6A and Dr. Saeed at 3A.  They are extremely

2   similar.  The only difference comes in the ability to climb

3   ladders, ropes, and scaffolds; Dr. Ahmed opined never,

4   Dr. Saeed occasionally, which is consistent with the RFC, and

5   therefore supports it.

6        The ALJ rejected the environmental limitations set

7   forth based upon the fact that she did not find and nor did

8   the doctors find plaintiff's respiratory condition to be

9   severe.  The Administrative Law Judge did add greater

10  manipulative limitations to accommodate the carpal tunnel

11  syndrome treatment that plaintiff experienced after the

12  issuance of those prior administrative findings.  That error,

13  however, did not harm the plaintiff.  The RFC does include

14  manipulative limitations limiting plaintiff to frequently

15  handle, finger, and feel with bilateral hands.

16       The opinions of state agency consultants such as

17  Dr. Ahmed and Dr. Saeed can provide substantial evidence to

18  support an RFC determination.  *Woytowicz v. Commissioner of*

19  *Social Security*, 2016 WL 6427787, from the Northern District

20  of New York, October 5, 2016; and *Angela B. versus*

21  *Commissioner of Social Security*, 2020 WL 17247244, from the

22  Western District of New York, November 28, 2022.

23       The staleness argument that the plaintiff has

24  raised, I find no merit.  It depends upon evidence that there

25  would have been significant deterioration in plaintiff's

1    condition since the issuance of those opinions.  The only

2    change that I could discern concerned the ability to

3    manipulate with the hands.  There doesn't appear to be

4    evidence of significant deterioration of plaintiff's cervical

5    condition and the limitations associated with those.  So I

6    find that the plaintiff has failed to carry her burden to

7    prove greater physical restrictions than those set forth in

8    the RFC is warranted.

9           Turning to the mental component, the RFC, it should

10   be noted, is extremely limiting.  The residual functional

11   capacity limits plaintiff in terms of mental capability as

12   follows.  The claimant should work at simple, routine and

13   repetitive tasks.  The claimant should work in a low-stress

14   job defined as occasional decision-making, occasional

15   judgment required, and occasional changes in the work

16   setting.  The claimant should work at goal-orientated work

17   rather than production pace work.  Claimant should have

18   occasional contact with co-workers, supervisors, and the

19   public, but would be able to interact with others

20   sufficiently in order to complete a brief training period

21   running from one to two days up to thirty days.  Again,

22   extremely limiting.

23          The mental component is based upon the medical

24   opinions of Dr. Shapiro, and I'll outline these in a minute,

25   to some degree Licensed Clinical Social Worker Fazzino and

1    Nurse Practitioner Blodgett, and somewhat on opinions from

2    state agency consultants Dr. Juriga and Dr. Kamin.

3             The first of those, of course, is Dr. Jeanne

4    Shapiro.  Her opinion is dated September 23, 2020, and it

5    appears at 356 to 360 of the record.  The medical source

6    statement finds basically no limitations in the ability to

7    understand, remember, or apply simple or complex directions

8    or instructions, or using reason and judgment to make

9    work-related decisions.  Dr. Shapiro finds a mild to moderate

10   limitation in plaintiff's ability to interact adequately with

11   supervisors, co-workers, and the public.  She finds that

12   plaintiff may be mildly to moderately limited in her ability

13   to sustain concentration and perform a task at a consistent

14   pace depending on her level of anxiety.  She further finds

15   that plaintiff is moderately limited in her ability to

16   sustain an ordinary routine and regular attendance at work,

17   and moderately limited in her ability to regulate emotions,

18   control behavior, and maintain well-being.

19             This opinion was discussed by the Administrative

20   Law Judge at page 17 and found to be supported by the medical

21   evidence in the record, including exam findings which show

22   improvement with treatment and provides substantial support

23   for the RFC.

24             The second opinion in the record, there are two,

25   one from Dr. M. Juriga dated October 5, 2020, and from Dr. E.

1   Kamin from October 16, 2020.  These are found at Exhibits 3A

2   and 6A, respectively.  They find that plaintiff's mental

3   condition is not severe.  That's at pages 98 and 112.

4        The ALJ found that those determinations were

5   somewhat consistent with benign evaluations of Dr. Shapiro

6   and other exams, but did not find it to be consistent with

7   plaintiff's need for ongoing mental health treatment.  That's

8   discussed at page 17.  I find no error.  Interestingly, in

9   assessing the so-called B criteria under the step three

10  determination in the regulations, Dr. Kamin found no

11  limitations in plaintiff's ability to understand, remember or

12  apply information, mild limitation in the ability to interact

13  with others, mild limitation in concentration, persistence

14  and pace, and mild limitations on the adapting and managing

15  oneself.  Similarly, Dr. Juriga found no limitation in the

16  understanding, remembering, and application of information,

17  mild in interacting with others, mild in concentration,

18  persistence and maintaining pace, and mild in the ability to

19  adapt or manage oneself.

20        And although the findings at step three, the B

21  findings, do not necessarily represent the residual

22  functional capacity or translate in that regard, they do

23  provide support for the ALJ's determination.

24        The other opinions in the record that speak to

25  plaintiff's mental condition, there were two; one is from

1   Nurse Practitioner Joshua Blodgett from January 11, 2021,

2   that appears at 740 and 742 of the Administrative Transcript,

3   and Therapist Anthony Fazzino from December 21, 2020,

4   appearing at 737 to 739 of the Administrative Transcript.

5   They're nearly identical.  They're extremely restricting.

6   Nurse Practitioner Blodgett, after reciting the symptoms that

7   plaintiff experiences, found that plaintiff is unable to meet

8   competitive standards in four areas under the category mental

9   abilities and aptitude needed to do unskilled work, and no

10  useful ability to function under that category in eight

11  subcategories.

12          He also found under mental abilities and aptitude

13  needed to do particular types of jobs, that plaintiff is

14  unable to meet competitive standards in three areas, and for

15  explanation stated the following, under the first

16  subcategory:  Alicia has limitations in her ability to

17  remember, maintain periods of work function if any at all,

18  trouble with follow through and struggles to manage symptoms

19  consistently.  And under the second:  Alicia's mental health

20  symptoms interfere with her ability to do or achieve any

21  work-related functions.

22          Therapist Fazzino in his medical source statement

23  found that plaintiff is unable to meet competitive standards

24  in four areas under mental abilities and aptitude needed to

25  do unskilled work and no useful ability to function in eight,

1   stating that plaintiff has attempted in the past but is

2   limited by ability to remember, stay on task, follow through,

3   and manage symptoms effectively.  He also found that

4   plaintiff is unable to meet competitive standards in three

5   areas, and seriously limited, but not precluded, in two under

6   mental abilities and aptitude needed to do particular types

7   of jobs.

8          The Administrative Law Judge considered these

9   opinions, found them somewhat persuasive, page 17, but found

10  them to be inconsistent with medical exams.  She noted that

11  there are no treatment notes from Therapist Fazzino.

12  Plaintiff argues that this creates an obvious gap in the

13  record that required the Administrative Law Judge to fill.

14  It was noted, however, that there were periodic reviews in

15  the record which show some of Therapist Fazzino's treatment.

16  And I note at page 36 and again at 55, plaintiff's counsel

17  during the two hearings stated that the record was complete.

18  I conclude that there was no obvious gap.  And in any event,

19  the argument was waived when counsel stated that the record

20  was complete.  *Gilbert H. v. Saul*, 2020 WL 6146596, from the

21  Northern District of New York, October 20, 2020.

22          The record in my view is adequate for the decision,

23  for the Administration Law Judge's decision.  There are

24  mental health findings of not only Nurse Practitioner

25  Blodgett, but several other treatment providers of the

1   plaintiff.  And plaintiff has failed to show how obtaining

2   Therapist Fazzino's notes would have changed the result.

3   *Reices-Colon versus Astrue*, 523 F.App'x 796, from the Second

4   Circuit, May 2nd, 2013.

5            I have reviewed carefully plaintiff's treatment

6   records in the Administrative Transcript.  There are

7   treatment records from several providers, including Prime

8   Care Medical Center where she saw Nurse Practitioner

9   Cassandra Hunsberger; Central New York Spine and Pain

10   Medicine, LLC, Dr. Young Seo primarily; Oswego Health where

11   plaintiff saw several nurse practitioners and appears to be

12   perhaps her primary health provider; Oswego Hospital; Liberty

13   Resources, including Therapist Fazzino and Nurse Practitioner

14   Blodgett, and Crouse Medical Practice Neurology.

15            A careful review of those records reveals that they

16   consistently show primarily a lack of significant

17   psychological issues.  Typical of many entries is one from

18   Central New York Spine and Pain, at 346:  Plaintiff awake and

19   oriented, normal ST, short term, and LT, long term, memory,

20   normal mood and affect.  That's from May of 2020.  Oswego

21   Hospital note, normal affect at 598, 630 and 460.  From

22   Liberty, Nurse Practitioner Blodgett, at 659, affect full and

23   congruent, judgment, insight unremarkable.  And that's

24   typical of several other notations from CNY Spine.  Typical

25   is denies anxiety, depression and suicidal ideation.  That's

1    at 730 from November 16, 2020.  From Oswego, at 772 and 791,

2    grossly oriented to person, time and place, judgment, insight

3    and memory intact, normal mood, appropriate affect.  And

4    these are typical of many, many, many entries in the

5    plaintiff's treatment records.  I recognize that some of

6    these are from providers that were of plaintiff's physical

7    condition, but nonetheless, they are observations that the

8    Administrative Law Judge is entitled to take into

9    consideration.

10           The medical evidence, including especially

11   Dr. Shapiro, provides adequate support for the RFC, including

12   the limitations in concentration, persistence and pace, which

13   are entirely consistent with simple work, goal-oriented.

14   Dr. Shapiro's opinion is consistent with the limited mental

15   aspect of the RFC.  *Diakogiannis v. Astrue*, 975 F.Supp. 2d,

16   299, from the Western District of New York, September 30,

17   2013.  *Tamara M. versus Saul*, 2021 WL 1198359 from the

18   Northern District of New York, March 30, 2021.  And see also

19   *Lander v. Colvin,* 2016 WL 1211283, from the Western District

20   of New York, and that is from March 29, 2016.

21           The issue of contact, the probationary period

22   contact is included in the RFC.  It is supported for the most

23   part by Dr. Shapiro who found moderate, mild to moderate

24   limitation.  Moderate limitation is consistent with frequent

25   in terms of the meaning of the term in Dr. Shapiro's report,

1  and this is consistent with *Sharon R. v. Kijakazi*, 2021 WL

2  3884257, from the Northern District of New York, August 31,

3  2021.  It is also supported in -- *Sharon R.* cites also to

4  another case that is supportive, *Jodi B. v. Commissioner of*

5  *Social Security*, 2021 WL 3682736, from the Western District

6  of New York, August 19, 2021.

7           In my view, Dr. Shapiro and the vocational expert

8  together support the additional interaction with supervisors

9  and co-workers during the probationary period.

10          So, in sum, I find that the residual functional

11  capacity is supported by substantial evidence and the

12  Administrative Law Judge correctly assessed the medical

13  opinions in the record.

14          The last argument surrounds evaluation of the

15  plaintiff's symptoms, what we used to call credibility.  An

16  ALJ obviously must take into account subjective complaints of

17  a plaintiff in making his or her step five disability

18  analysis, but is not required to unquestionably accept any

19  subjective testimony by a claimant.  Rather, the RFC, the ALJ

20  retains the discretion to evaluate the claimant's subjective

21  testimony, including testimony concerning pain or otherwise;

22  *Mimms v. Heckler*, 750 F.3d 180, at 185 to 186, Second

23  Circuit, 1984.  In deciding how to exercise that discretion,

24  the ALJ must consider a variety of factors which would

25  ordinarily inform the question of credibility in any context,

1  including the plaintiff's believability, his or her

2  motivation, and the medical evidence in the record.  In doing

3  so, an ALJ must reach an independent judgment concerning the

4  actual extent of limitations suffered by the plaintiff and

5  its impact on her ability to perform work functions.

6  Notably, an ALJ's determination as to a claimant's subjective

7  complaint is entitled to considerable deference.  *Edward J.*

8  *v. Kijakazi*, 2022 WL 4536257, Northern District of New York,

9  September 28, 2022.  See you also *Virginia D.F. versus*

10 *Commissioner of Social Security,* 2022 WL 4652361, Northern

11 District of New York, August 19, 2022.

12         The plaintiff testified that she is unable to work

13 due to her mental condition.  That's at page 57.  The

14 Administrative Law Judge considered in addressing the issue

15 of credibility plaintiff's treatment notes; relatively robust

16 activities of daily living, her ability to cook, clean, do

17 laundry, socialize; the fact that as treatment notes reflect

18 often denied psychiatric or psychological problems; the fact

19 that treatment notes showed improvement with treatment; and

20 plaintiff's desire to reduce her medications.  In dealing

21 with her neck pain, the objective evidence was relatively

22 modest.  An MRI showed modest findings of a bulging disc.

23 The EMG studies showed no radiculopathy.  The carpal tunnel

24 syndrome claim is not supported by testing, with findings of

25 normal grip, strength and so forth.

1          In sum, I find that the Administrative Law Judge's

2     determination and how she exercised her discretion is

3     supported by substantial evidence.  The bottom line is that

4     this is a deferential standard of review.  I find that the

5     determination is supported by substantial evidence and that

6     the plaintiff has failed to demonstrate to the Court that no

7     reasonable fact-finder could find the facts as the

8     Administrative Law Judge in this case.  So I will grant

9     judgment on the pleadings to the defendant and order

10    dismissal of plaintiff's complaint.

11          Thank you both for excellent presentations.  I hope

12    you have happy holidays.

13                        *           *           *

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4          I, EILEEN MCDONOUGH, RPR, CRR, Federal Official

5    Realtime Court Reporter, in and for the United States

6    District Court for the Northern District of New York,

7    do hereby certify that pursuant to Section 753, Title 28,

8    United States Code, that the foregoing is a true and correct

9    transcript of the stenographically reported proceedings held

10   in the above-entitled matter and that the transcript page

11   format is in conformance with the regulations of the

12   Judicial Conference of the United States.

13

14

15

16   _____

17                    EILEEN MCDONOUGH, RPR, CRR
                      Federal Official Court Reporter

18

19

20

21

22

23

24

25